UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

HEATHER W.,

                                    Plaintiff,

v.

ANDREW SAUL,

                                    Defendant.

Case No.:  19-CV-00844-BGS

**ORDER:**
  **(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 19];**
  **(2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF No. 20]; AND**
  (3)**REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

[ECF 19-20]

## I.    INTRODUCTION

Plaintiff Heather W. ("Plaintiff") has filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of disability insurance benefits under the Social Security Act, (ECF 1), and the Commissioner has filed the Administrative Record.  (ECF 14-16.)  Plaintiff has filed a Motion for Summary Judgment seeking reversal of the final decision denying

benefits and a remand for further administrative proceedings.  (EFC No. 19.)[1]  Plaintiff argues the Administrative Law Judge ("ALJ") committed reversible error in rejecting the opinions of a treating physician and an examining physician and rejecting Plaintiff's subjective symptom testimony.  (*Id.*)  The Commissioner's Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion argues that the ALJ properly rejected the physician opinions and Plaintiff's subjective symptom testimony.  (ECF No. 20-1.)  Plaintiff has also filed a Reply.  (ECF 21.)

After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, Plaintiff's Motion for Summary Judgment is granted, the Commissioner's Cross Motion for Summary Judgment is denied, and the case is remanded for further proceedings.

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental social security income on February 27, 2015, with an alleged onset date of March 28, 2013.  (AR 202, 267.)[2]  Her application was denied, (AR 132-135) and her subsequent request for reconsideration was also denied (AR 140-146).  At Plaintiff's request, a hearing before an ALJ was held on November 17, 2017 at which Plaintiff was represented by counsel and testified, along with a Vocational Expert.  (AR 147-48 (request for hearing), 46-105 (transcript of hearing).)  On March 18, 2018, the ALJ issued a decision finding Plaintiff was not disabled and denied Plaintiff's application for benefits.  (AR 10-45.)  The Appeals Council denied review on March 8, 2019.  (AR 1-6.)

---

[1] The Court cites the electronic CM/ECF pagination for citations to the parties' briefs. All other citations are to the Administrative Record's pagination.

[2] The ALJ's decision explains that Plaintiff filed a previous application on January 23, 2014 with an alleged disability date of March 25, 2013.  (AR 13.)  Because denial of that application on August 12, 2014 was not appealed the ALJ limited Plaintiff's current claim to begin on August 13, 2014. (*Id.*)

## III.   SUMMARY OF FIVE STEPS

The ALJ's decision explains and then goes through each potentially dispositive step of the familiar five-step evaluation process for determining whether an individual has established eligibility for disability benefits.[3]  (AR 14-40.); *see Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724-25 (9th Cir. 2011); *see* 20 C.F.R. §§ 404.1520.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 28, 2013.  (AR 16.)  At step two, the ALJ found Plaintiff had "the following severe impairments: anxiety disorder, mood disorder with depression, and migraines."  (AR 16-18.)  At step three the ALJ considers whether the claimant's impairments "meet or equal" one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings.  *See* §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. Here, the ALJ found Plaintiff did not meet a listing, specifically listings 12.04 or 12.06.  (AR 19-20.)

If the claimant does not meet a listing, the ALJ "assess[es] and makes a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1520(e).  A claimant's residual functional capacity ("RFC") is the "maximum degree to which the individual retains the

---

[3] In order to qualify for disability benefits, an applicant must show that: (1) he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A).  An applicant must meet both requirements to be "disabled."  *Id.*  The claimant bears the burden of proving he is disabled.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  But, at step five, the Commissioner bears the burden of showing the claimant can do other kinds of work that exist in significant numbers in the national economy "taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id.*

capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). The RFC is used at the fourth and fifth steps to determine whether the claimant can do their past work (step four) or adjust to other available work (step five). *Id.*

Here, the ALJ found the following RFC for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.157(b) except she must work in an environment that does not have brighter lights or louder noises than found in [a] typical office environment. She can perform work involving simple, routine takes, no public contact, and only occasional contact with supervisors and coworkers. She requires a work environment that would remain stable.

(AR 20.)

As discussed more fully below, Plaintiff challenges the RFC found by the ALJ. She argues that in arriving at this RFC the ALJ erred in rejecting two physician opinions that found she was more limited than this RFC and in rejecting her testimony regarding the severity of her symptoms. (ECF 19 at 16 ("[T]he ALJ failed to set forth legitimate reasons for discounting these thorough and well-supported opinions, which conflict with and undermine the RFC, and he therefore committed legal error"), 21 ("[T]he ALJ disregarded evidence of Plaintiff's panic disorder and agoraphobia and dismissed the intensity and limiting effects of her symptoms").) Defendant counters that the ALJ properly resolved conflicting medical opinion evidence in arriving at this highly restrictive RFC, and that as to the allegations the ALJ did not already accommodate in the RFC, he provided valid reasons, including the medical evidence, Plaintiff's treatment history, and Plaintiff's activities of daily living. (ECF 20-1 at 7-8, 15-17.)

At step four, the ALJ found Plaintiff could not do her past relevant work as a radio dispatcher or administrative clerk. (AR 38.) At step five, the ALJ considers whether the claimant can do other work, considering the claimant's age, education, work experience, and the limitations in the RFC. 20 C.F.R. §§ 404.1520(a)(v). If the claimant can do other

4

available work, then the claimant is found not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  Here, the ALJ heard and relied on testimony from a vocational expert that work existed in significant numbers in the national economy for a person of Plaintiff's age, education, work experience and with the RFC found by the ALJ.  (AR 39, 91-104.)

## IV.   SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision.  42 U.S.C. § 405(g).  This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  *See id.*; 20 C.F.R. § 404.900(a)(5).  The matter may also be remanded to the Social Security Administration for further proceedings.  42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).  The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).  The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).  "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

## V.   DISCUSSION

Plaintiff argues the ALJ erred in two respects: (1) rejection of physician opinions (one treating physician and one examining physician) (ECF 19 at 16-20); and (2) that the ALJ failed to properly evaluate Plaintiff's subjective complaints. (ECF 19 at 20-23.)

**A.      Rejection of Dr. Tilley and Dr. Addario's Opinions**

Plaintiff argues the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Dr. Tilley and Dr. Addario.  Plaintiff asserts that Dr. Tilley was a treating physician and that Dr. Addario was an examining physician.  As explained further below, although Dr. Tilley went on to treat Plaintiff, at the time she evaluated Plaintiff and provided the opinion that is at issue here, it was the first time she saw Plaintiff.  Accordingly, the Court considers whether Dr. Tilley was a treating or examining physician and the applicable standard as to both physician opinions.

**1.  Determination of Applicable Standard**

The Ninth Circuit "distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "'As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant,'" and "the opinion of an examining physician is entitled to greater weight than that of a non-examining physician."  *Garrison*, 759 F.3d at 1012 (quoting *Lester*, 81 F.3d at 830 and citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  "The weight afforded a non-examining physician's testimony depends on the degree to which they provide supporting explanations for their opinions."  *Id.* (quoting *Ryan*, 528, F.3d at 1201). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion [of] an examining physician or a treating physician." *Lester*, 81 F.3d at 831.

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the

treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing § 404.1527(c)(2)-(6)). Failure of the ALJ to consider these factors for weighing the opinion constitutes reversible legal error. *Id.* at 676.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Lester*, 81 F.3d at 830).[4] "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors, are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)

In considering whether an ALJ has properly rejected a physician's opinion, the court must rely only on the ALJ's stated bases for rejecting the claimant's disability claims. *Trevizo*, 871 F.3d at 677 n.4, ("Because the ALJ did not provide these explanations herself as a reason to reject [the treating physician's opinion], the district court erred in looking to the remainder of the record to support the ALJ's decision, and we cannot affirm on those grounds."); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87

---

[4] A higher standard, "clear and convincing" reasons supported by substantial evidence, applies when the treating physician opinion being rejected is not contradicted by other evidence in the record. *Ford*, 950 F.3d at 1154 ("If a treating physician opinion is not contradicted by other evidence in the record, the ALJ may reject it only for clear and convincing reasons that are supported by substantial evidence in the record.") (citations omitted).

1   (1943) ("The grounds upon which an administrative order must be judged are those upon
2   which the record discloses that its action was based.").

3                  **a)   Dr. Tilley's Opinion was Provided as an Examining Physician**

4        First, because a treating physician opinion may be entitled to controlling weight
5   and greater weight than other physician opinions, the Court must determine whether Dr.
6   Tilley was a treating or examining physician at the time she rendered the opinion at
7   issue.[5]

8        As reflected in the ALJ decision, Plaintiff continued to receive treatment from Dr.
9   Tilley *after* the opinion that is at issue here was issued.  (AR 30-33.)  However, at the
10  time of the evaluation, she had not been treating Plaintiff.  In fact, it was the first time Dr.
11  Tilley had seen Plaintiff.  As such, the Court finds Dr. Tilley to be an examining
12  physician at the time of the evaluation and will thusly apply the examining physician
13  standard to her opinion.

14                 **b)   Specific and Legitimate Reasons Required**

15       Plaintiff wisely does not argue that the opinions of Dr. Tilley and Dr. Addario are
16  uncontradicted.  As Defendant accurately summarizes, the ALJ considered six different
17  opinions as to Plaintiff's mental functioning, none of which were from physicians that

---

[5] If Dr. Tilley's opinion is considered one of a treating physician, then her opinion alone, if considered controlling, under certain circumstances could be enough to establish an entitlement to benefits. *See Trevizo*, 871 F.3d at 677 (citing *Lingenfelter v Astrue*, 504 F.3d 1028, 1041 n.12 (9th Cir. 2007) (Finding a treating physician opinion alone established an entitlement to benefits when a vocational expert had testified a claimant with the limitations in the physician's opinion would preclude any full-time work). Plaintiff identifies her as a treating physician, presumably based on her subsequent treatment of Plaintiff after this opinion was provided.  Defendant did not dispute this or address whether Dr. Tilley was appropriately characterized as a treating physician. However, the Court has independently considered the issue to avoid error.

had regularly provided treatment to Plaintiff.[6]  (ECF 20-1 at 7; AR 35-36 (summarizing opinions).)  Dr. Tilley and Dr. Addario provided the opinions that are at issue here.  (AR 1879-1947 (Dr. Tilley), 3709-97 (Dr. Addario).)  As summarized above, consultive examiners Dr. Glassman and Dr. Greytek both examined Plaintiff and provided opinions regarding her limitations, and state agency psychological consultants Dr. Peltz and Dr. Foster-Valdez also provided opinions. (AR 435-39 (Dr. Glassman), 1540-47 (Dr. Greytek), 106-116 (Dr. Peltz), 118-130 (Dr. Foster-Valdez).)  Because Plaintiff does not ask the Court to apply the clear and convincing standard that applies to uncontradicted opinions, the Court does not dwell on the point here, but finds Dr. Tilley and Dr. Addario's opinions are contradicted by the other four opinions.  Generally, while they found Plaintiff had limitations, they did not find them to be as restrictive as Dr. Tilley or Dr. Addario did.

Given their examining physician opinions were contradicted, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence" for rejecting Dr. Addario and Dr. Tilley's opinion.  *Bayliss*, 427 F.3d at 1216("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.").  As discussed further below, the ALJ provides reasons for giving little weight to the opinions of Dr. Addario and Dr. Tilley.  However, the reasons given are either not explained in any depth or not proper reasons for discounting these opinions. *See Reddick*, 157 F.3d at 725 ("The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors, are correct.")

---

[6] As reflected in the ALJ decision, Plaintiff continued to receive treatment from Dr. Tilley *after* the opinion that is at issue here was issued, (AR 30-33), however, at the time of the evaluation, she had not been treating Plaintiff.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2. ALJ's Reasons for Discounting Dr. Addario and Dr. Tilley's Opinions

The ALJ has provided the following reasons for giving little weight to Dr. Tilley and Dr. Addario's opinions:

> In considering these reports and weighing the opinions contained therein, the undersigned notes that the standards for determining disability in Workers' Compensation cases are completely different than the standards used in Social Security cases.  The undersigned also points out that the medical opinions offered in workers compensation cases often fall within two extremes: favoring the individual who filed the claim or favoring the insurance company.  With this in mind, the undersigned has fully reviewed and considered the various physicians' reports, including the findings and the determinations of disabled or not disabled. Dr. Addario and Dr. Tilley only examined the claimant on one occasion when they rendered these opinions, and their opinions are not fully consistent with their own mental status examinations of the clamant, which elicited signs of potential exaggeration of symptoms (l 7F/22-28; 26F/69-70).  Furthermore, they do not take into consideration the improvement of the claimant's symptoms since they rendered their opinions, or the claimant's own admitted daily activities. Additionally, Dr. Tilley only cited what claimant "stated," and did not cite to her own mental status examination of the claimant, or to her mental health treatment records.

(AR 36-37).

The Court addresses each reason in turn.

### a) Opinions Based Primarily on the Plaintiff's Subjective Complaints

After summarizing the opinions of Dr. Tilley and Dr. Addario, but before giving his reasons for giving their opinions little weight, the ALJ states, "[h]owever, these opinions were based primarily on the claimant's subjective complaints." (AR 36 (citing AR 2036-40).)  It is unclear whether and to what extent the ALJ gave little weight to the opinions of these doctors because they were based primarily on Plaintiff's subjective complaints.  In the next paragraph he lists the reasons for his finding of little weight to their opinions, but these reasons do not regard the subjective nature of Plaintiff's

complaints.  However, at the end of his list of reasons he adds that Dr. Tilley only cited to what Plaintiff stated and did not cite to her own mental status examination of the Claimant or to her mental health records.  Assuming the ALJ is discounting Dr. Tilley's report based on this assessment, it is unclear whether this reason was intended to apply to Dr. Addario as well. (AR at 36-37).  For purposes of this Order, the Court will assuming the ALJ did rely on this factor as to both opinions.

Plaintiff argues the ALJ erred in "reject[ing] the opinions, asserting they were 'based primarily on the claimant's subjective complaints' . . ." (ECF 19 at 18 (quoting AR 36).)  Plaintiff disputes this characterization of Drs. Tilley and Addario opinions, pointing to the length of their reports, time spent examining Plaintiff and preparing their reports, as well as their observations of Plaintiff as proof that neither relied primarily Plaintiff's subjective complaints.  (*Id.* at 18-19 (citing AR 1880, 1900-01, 1906, 1914, 3709-88, 3792) (portions of the physicians' reports).)  In short, Plaintiff argues that they were not based primarily on her subjective complaints because they are extensive reports and include each physicians' observations and conclusions about Plaintiff.  (*Id.*)

Defendant counters, with reference to the ALJ decision and the physician reports, that in setting Plaintiff's limitations, Dr. Tilley simply block quoted Plaintiff's subjective reports verbatim on daily living, social functioning, concentration, and adaptation.  (ECF 20-1 at 12 (citing AR 1935-41.)  Similarly, Defendant argues Dr. Addario's opinion refers only to Plaintiff's eleven-year employment history and traumatic events in identifying evidence in support of her opinion, but all this information was conveyed by Plaintiff.  (*Id.* (citing AR 3785).)  Defendant acknowledges Dr. Addario referred to psychiatric testing, but only as to diagnoses, not Plaintiff's limitations.  (*Id.* (citing AR 3785).)

First, as noted above, it is not clear if the ALJ even intended to encompass Dr. Addario's opinion as to this particular reason because the ALJ only cites Dr. Tilley's opinion on this point and provides no other explanation here.  Additionally, in summarizing these opinions in Plaintiff's medical history, the ALJ only characterizes Dr.

Tilley's opinion as being based on Plaintiff's "subjective reports" and "many subjective tests." (AR 30-31.) The ALJ does not provide similar characterizations of Dr. Addario's opinion. Also, although the ALJ is addressing these opinions together, this statement comes just after the ALJ summarized Dr. Tilley's opinions suggesting he may have only intended to give this reason as to Dr. Tilley's opinion.

The portion of Dr. Tilley's opinion that is cited is a section where Plaintiff has filled out a form regarding her daily activities. It does not cite or address any of the testing conducting by Dr. Tilley or Dr. Addario to arrive at their conclusions or explain if the test results themselves should be discounted because they too are based on Plaintiff's self-reports. The Court would agree that both opinions do rely on Plaintiff's self-reporting, although Dr. Tilley's is more so because it repeatedly block quotes Plaintiff's statements throughout.

Generally, "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant non credible, the ALJ may discount the treating provider's opinion."); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (concluding that the ALJ may properly reject the opinion of a treating physician that relies on a claimant's *unreliable* self-reports) (emphasis added).

However, an ALJ cannot discount a physician opinion on the basis of it being "self-report[ed]" when the physician's evaluation also uses "objective measures" like "a clinical interview and a mental status evaluation." *Buck*, 869 F.3d at 1049. When an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *see also Ryan,* 528 F.3d at 1199–1200.

1      Applying this standard to the present case, the Court finds both physicians

2   interviewed Plaintiff, conducted numerous tests, and provided mental status evaluations

3   in arriving at their opinions.  (AR 1878-1947 (Dr. Tilley), 3709-3797 (Dr. Addario).)[7]

4   Further, although the Court recognizes the tests conducted rely extensively on Plaintiff's

5   self-reports, the Court must be mindful that "the rule allowing an ALJ to reject opinions

6   based on self-reports does not apply in the same manner to opinions regarding mental

7   illness." *Buck*, 869 F.3d at 1049.  As the Ninth Circuit explained, "[p]sychiatric

8   evaluations may appear subjective, especially compared to evaluations in other medical

9   fields.  Diagnoses will always depend in part on the patient's self-reports, as well as on

10  the clinician's observations of the patient.  But such is the nature of psychiatry." *Id.*

11  (citing *Poulin*, 817 F.2d 865, 873 (D.C. Cir. 1987)).

12      In summarily stating these opinions were based primarily on the claimant's

13  subjective complaints, the ALJ failed to consider objective measures taken by the two

14  physicians and explain what weight he gave them in making that comment.  To the extent

15  the ALJ discounted these opinions because they were based primarily on Plaintiff's self-

16  reports, that finding is in error and therefore not based on substantial evidence.

### b)   Provided in Workers Compensation Proceedings

18      Plaintiff argues the ALJ "cannot discount the opinions *solely* on the ground that

19  they were rendered initially in the course of a worker's compensation claim."  (ECF 19 at

20  17 (emphasis added).)  As explained below, the Court agrees the ALJ would have erred

21  in rejecting these opinions because they were provided in workers compensation

22

23

---

24  [7] In addition to examining Plaintiff, administrating numerous tests, explaining the tests
25  given, analyzing the results of those tests, and providing opinions regarding Plaintiff's
    limitations, Dr. Tilley's evaluation also includes a summary of time spent: 3 hours of face
26  to face time; more than four hours of test administration and analysis; more than four
27  hours of medical records review; and ten hours preparing the lengthy report.  (AR 1880
    (summary).)  Dr. Addario's opinion similarly included time spent in a face-to-face
28  interview (two hours) and administration and scoring of tests (three hours).  (AR 3709.)

proceedings.  And, although the Court finds that does not appear to be what the ALJ intended, regardless, this finding is not a specific and legitimate reason for discounting these opinions.

The ALJ describes Dr. Tilley and Dr. Addario as "her examining[8] Workers' Compensation doctors."  (AR 36.)  The decision goes on to "note[] that the standards for determining disability in Worker's Compensation cases are completely different than the standards used in Social Security cases." (*Id.*)  The Court would agree with Defendant that this statement by the ALJ is accurate.  (ECF 20-1 at 14 ("The ALJ also explained both Drs. Tilley and Addario rendered their opinions in the context of Plaintiff's worker's compensation case, which was governed by separate standards than Plaintiff's disability claim under the Act.").)  There was no error in explaining that the standards are different and the ALJ is not bound by disability determinations based on different standards.

However, the ALJ goes on to state "[t]he undersigned also points out that the medical opinions offered in workers compensation cases often fall within two extremes: favoring the individual who filed the claim or favoring the insurance company.  *With this in mind*, the undersigned has fully reviewed and considered the various physician reports, including the findings and the determinations of disabled or not disabled."  (AR 36 (emphasis added).)  Defendant does not address whether this negative characterization (that workers compensation opinions generally favor one side or the other) constitutes a rejection of these opinions because they were rendered in workers compensation proceedings.  And, even though the ALJ goes on to say that he has reviewed and consider the various physician reports, the ALJ also says it was done "with this, [that workers compensation opinions generally favor one side or the other], in mind."  (*Id.*)

To the extent the ALJ is discounting these opinions because they were provided as part of a worker's compensation proceeding, the ALJ erred.  "The purpose for which

---

[8] As noted above, for purposes of reviewing the ALJ's decision to reject these opinions, both are considered examining physician opinions.  (*See* V.A.1.a)

medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832.  As the Ninth Circuit has explained, "we have previously considered reports prepared by doctors who examined claimants for worker's compensation purposes—whose reports will, as often as not, benefit claimants." *V.A. v. Saul*, 2020 WL 6821626, at *1 (9th Cir. Nov. 20, 2020) (Finding no error in ALJ's consideration of the examining physician's workers compensation reports to reject another physician opinion) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1094 (9th Cir. 2014)).

When considered collectively, the explanation could most fairly be read to mean the ALJ "fully reviewed and considered" the "findings and the determinations of disabled or not disabled" despite that they were prepared in the course of workers compensation proceedings that apply different standards.  It appears to the Court that the ALJ is simply making clear he is not required to accept the conclusions of these examinations, but that he has considered them.  This is consistent with the ALJ's explanation as a whole.  This language immediately follows the ALJ summarizing these physicians' *conclusions* regarding Plaintiff's limitations.  It would be reasonable to start by explaining why those *conclusions* are not binding, but also clarifying that the ALJ has considered the physicians' reports.  (*Id.*)  Additionally, there is no explanation how these opinions fit the ALJ's negative characterization of worker compensation opinions, improperly favoring one or the other.  If the ALJ were discounting them on this basis, the ALJ would have had to provide some evidence is support of that vague and overly broad conclusion.

Having reviewed this issue in the context of the decision as a whole, the Court finds the ALJ was not rejecting or discounting these opinions because they were produced in workers compensation proceedings.  However, to the extent the ALJ was discounting them on this basis, it was in error.  Either way, this does not constitute a specific and legitimate reason based on substantial evidence for rejecting either opinion.

### c)   The ALJ's Other Reasons for Discounting the Opinions

The ALJ gave the following other reasons for giving little weight to the opinions of examining Drs. Tilley and Addario. "Dr. Addario and Dr. Tilley only examined [Plaintiff] on one occasion when they rendered these opinions, and their opinions are not fully consistent with their own mental status examinations of the claimant, which elicited signs of potential exaggeration of symptoms."  (AR 36 (citing portions of Dr. Addario and Dr. Tilley's mental status evaluations at AR 1900-06 (Dr. Tilley), 3777-78 (Dr. Addario).) "Furthermore, they do not take into consideration the improvement of the claimant's symptoms since they rendered their opinions, or the claimant's admitted daily activities."  (AR 36.)

As explained above, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d 1216. Legitimate factors that the ALJ is to consider in determining the weight to give a treating physician when his opinion is not controlling and an examining physician include "factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician."  *Trevizo*, 871 F.3d at 675 (citing § 404.1527(c)(2)-(6)).[9]

The Court finds the ALJ's stated reasons to discount the opinions are within these recommended factors. Specifically, 20 C.F.R. § 404.1527(c)(2)(i) (Length of the treatment relationship and the frequency of examination); (c)(2)(ii) (Nature and extent of the treatment relationship); (c)(3) (Supportability); (c)(4)(Consistency); (c)(6) (Other factors which tend to support or contradict the medical opinion.).  However, the issue

---

[9] As noted above, the rationale behind the weight given to treating physician opinions does not apply to Dr. Tilley's opinion.  At the time the examination her opinion was based on was conducted, Dr. Tilley had no history of treating Plaintiff.  As such her opinion is not given controlling effect.

here is not whether the ALJ relied on erroneous factors to discredit their opinions, but whether he made adequate findings supported by substantial evidence.  As noted above, "[t]he ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Tomasetti*, 533 F.3d at 1041 (quoting *Magallanes*, 881 F.2d at 751); *Trevizo*, 871 F.3d at 675.

### (1)     Only Examined Once

The Court finds that the ALJ properly considered length of treatment as a factor to discount the two physician opinions. They indeed only had examined the Plaintiff on one occasion when they rendered their opinions. However, only examining Plaintiff once at the time these opinions were provided would not alone be substantial evidence to give them little weight.  If that were the case, there would be no medical opinions to rely on in this case since none of Plaintiff's regularly treating physicians provided opinions and none of the opinions the ALJ had to consider had a treatment relationship with Plaintiff at the time their opinions were provided.  Additionally, the opinions he gave great weight to also only examined Plaintiff once.

### (2)     Inconsistent with Mental Status Examinations

Next, the ALJ found that Dr. Addario's and Dr. Tilley's opinions were "not fully consistent with their own mental status examinations of the cla[i]mant, which elicited signs of potential exaggeration of symptoms." (AR 36 (citing l7F/22-28 [AR 1879-2116]; 26F/69-70 [AR 3709-3801]).)  Dr. Addario's opinion indicates with regard to test validity that Plaintiff "reported an above average number of unusual psychological symptoms rarely endorsed by individuals dealing with genuine psychological problems," and "[s]he is either dealing with genuine psychological problems or over-reporting her symptoms." (AR 3778.)  It also indicates "she endorsed an above average number of physical symptoms rarely described by individuals with genuine medical problems."  (*Id.*) Similarly, Dr. Tilley's evaluation states:

[s]he reported a considerably larger than average number of somatic symptoms rarely described by individuals with genuine medical conditions. She also provided an unusual combination of responses that is associated with non-credible reporting of somatic and/or cognitive symptoms. The combination of responses may occur in individuals with substantial medical problems who report credible symptoms, but it could also reflect exaggeration.

(AR 1906.)

In her Motion, Plaintiff argues that Dr. Tilley's opinion sufficiently addressed exaggeration because it notes these unusual responses could occur in someone with significant emotional dysfunction and Dr. Tilley did not find Plaintiff was malingering. (ECF 19 at 18 (citing AR 1906, 1914).)  Similarly, as to Dr. Addario's opinion, Plaintiff argues the ALJ erred in considering exaggerated symptoms because Dr. Addario found Plaintiff displayed no evidence of faking, malingering, or deceiving.  (*Id.* at 19 (citing AR 3778.)  Defendant responded in opposition that the absence of malingering Plaintiff relies on is irrelevant because the ALJ did not find she was malingering. (ECF 20-1 at 11.) Rather, Defendant argues Plaintiff's tendency to exaggerate, even if not intended, means she may not have accurately described the degree of symptoms and limitations she actually experienced.  (*Id.*)  In her Reply, Plaintiff repeats the same argument as to Dr. Addario, but as to Dr. Tilley, cites a different portion of Dr. Tilley's opinion which indicates that it is Dr. Tilley's opinion that Plaintiff is a "generally credible historian, despite the fact she obtained a questionably valid profile on the MMPI-2-RF."  (AR 1928.)

The Court understands the ALJ's reasoning here to be that one of the reasons he has given these opinions less weight is that the testing they rely on may not be valid because the test itself indicates she might be exaggerating her symptoms.  As to this particular point, it is not necessarily that the ALJ found she exaggerated, but rather that the examination results identify her responses as indicating she may be exaggerating, but they both rely on those results anyway.

The Court would agree that an unexplained conflict like relying on examination results to form opinions when the test itself indicates a claimant is exaggerating, particularly when those examinations are so heavily reliant on self-reporting, could constitute a specific and legitimate reason for discounting that opinion. "A conflict between a treating physician's medical opinion and his own notes is a . . . specific and legitimate reason for rejecting it." *Ford*, 950 F.3d at 1154 (noting that because it is a clear and convincing reason it is also a specific and legitimate reasons) (citing *Bayliss*, 427 F.3d at 1216); *see also id.* at 1155 ("An ALJ is not required to take medical opinions at face value but may take into account the quality of the explanation when determining how much weight to give a medical opinion.") (citing *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)).

However, as Plaintiff accurately explains, both physicians address the likelihood that Plaintiff was malingering or faking symptoms and Dr. Tilley specifically addresses the possible issues with the profile and determines she is a credible historian. Additionally, Plaintiff points out that as to both, there is only the potential these results are from exaggeration and both identify alternative legitimate reasons for those results. None of this is addressed by the ALJ in concluding "their opinions are not fully consistent with their own mental status examinations." (AR 36.)

Although inconsistency between test results and their mental status examinations might be a specific and legitimate reason to discount an opinion, here the only inconsistency identified by the ALJ are test results that *might* reflect possible exaggeration of symptoms. However, those results were identified and explained by the physicians. The ALJ for his part did not set forth his interpretation of the evidence and explain how they were inconsistent, what was wrong with their explanation, or why the two physicians were incorrect in their findings. *See Reddick*, 157 F.3d at 725 (9th Cir. 1998) (The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors' are correct.") Because the ALJ did not explain why the two physicians were incorrect in their reliance on the mental examinations, he has

failed to meet his burden.  As such his finding was not supported by substantial evidence and the Court cannot fill in the blanks by reviewing the record and providing support for the ALJ's conclusion.

### (3)   Improvement in Plaintiff's Symptoms and Daily Activities Since Opinions Were Rendered

In giving little weight to the opinions of Drs. Tilley and Addario, the ALJ found that their opinions "do not take into consideration the improvement of the claimant's symptoms since they rendered their opinions, or the claimant's admitted daily activities." (AR 36.)  The Court notes this one sentence is the sum total of the ALJ's reasons for discounting Dr. Addario's and Dr. Tilley's opinions on both these two points.

### (a)   Improvements

As to Plaintiff's improvements, she accurately points out that the ALJ's decision fails to support any conclusion that Plaintiff's symptoms improved after their assessments.  (ECF 19 at 19.)  The Court would agree that the ALJ does not identify or explain when or how Plaintiff has improved.  In this respect, it is hard to consider whether this reason is supported by substantial evidence because it is unclear what improvements the ALJ is relying on to discount these opinions.  The Court cannot be expected to find the ALJ properly rejected or discounted these opinions based on an improvement the ALJ has not identified.  *See Ogin v. Colvin*, 608 F. App'x 519, 520 (9th Cir. 2015)(Finding that the ALJ failed to provide specific and legitimate reasons for rejecting a treating physician's opinions when she said that the physician's findings did not match the contemporary findings found in the claimant's treating records, but failed to specify which findings in which treating records she was relying on); *see also Jones v. Astrue*, 503 Fed. Appx. 516, 517 (9th Cir. 2012) (citing *Lester*, 81 F.3d at 830) (An ALJ's unsupported assertion that opinions contrary to the treating physicians are supported by the "great weight of evidence" does not constitute specific and legitimate reasons for discrediting the treating physicians' reports.)

Looking elsewhere in the decision, the ALJ identified improvements but in the context of discrediting Plaintiff's allegations of near total loss of functioning. (AR 34). "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  The claimant's mental health treatment has been routine and conservative, and her progress notes generally show improvement in her symptoms with medication and therapy." (AR 22-23).

After making this finding, the ALJ summarizes in chronological order Plaintiff's medical history. (*See* AR 23-34.)  He then concludes, "Overall, the objective medical evidence does not support the claimant's alleged near-total loss of functioning." (AR 34.) As part of this conclusion he indicates,

> Furthermore, her progress notes from her therapists and psychiatrists have shown her symptoms of depression and anxiety have improved over time with adjustments to her medications, therapy, and utilization of coping skills, including her dog. Although she still has ongoing symptoms of anxiety, depression, and agoraphobia, her mental status examinations have generally been unremarkable for any cognitive limitations.  They have generally shown her to have anxious mood and affect, but normal behavior, no suicidal ideation, no auditory or visual hallucinations, linear thought process, good insight and judgment, and intact memory. These findings are also generally consistent with her mental status examinations with the consultative psychological examiners.

 (AR 34.)

After making these findings, the ALJ turns to the opinion evidence. (*See* AR 35-37.) In this portion of his decision the ALJ gives little weight to the opinions of Drs. Tilley and Addario and makes his conclusory statement that their opinions did not consider the improvements in Plaintiff's symptoms since they rendered their opinions. (AR 36.) However, the ALJ does not reference whether he is relying on the same improvements he

1  found to discredit Plaintiff's allegations to then give little weight to the two doctors

2  opinions.  The Court is left to infer that he was referencing the same improvements

3  Even assuming the ALJ was referencing the same improvements to give little weight

4  to their opinions and that these reasons are actually supported by substantial evidence, the

5  decision still is fatally flawed because the ALJ never explained how these improvements

6  undermine Dr. Tilley and Addario's opinions.  He does not reference the part(s) of their

7  opinions he discredits nor explain how these purported improvements to her symptoms

8  undermine them.  The reviewing court, in considering whether an ALJ has properly

9  rejected a doctor's opinion, must rely only on the ALJ's stated bases for rejecting the

10 claimant's disability claims.  *Trevizo*, 871 F.3d at 677 n.4 ("Because the ALJ did not

11 provide these explanations herself as a reason to reject [the treating doctor's opinion], the

12 district court erred in looking to the remainder of the record to support the ALJ's decision,

13 and we cannot affirm on those grounds.").

14 Here, the only stated basis for rejecting the two opinions is the one sentence

15 conclusory statement.  *See Reddick*, 157 F.3d at 725 ("The ALJ must do more than offer

16 his conclusions. He must set forth his own interpretations and explain why they, rather than

17 the doctors, are correct.")  Since the decision fails to provide the required analysis, the

18 ALJ's finding of improvements to discredit the opinions is not supported by substantial

19 evidence.[10]

20                          **(b)    Plaintiff's Daily Activities**

21 Here, the ALJ discounts Dr. Addario and Dr. Tilley's opinions because they "do

22 not take into consideration . . . claimant's admitted daily activities."  (AR 36.)

23 An ALJ may discount a medical source opinion, including a treating source's

24 opinion, to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d

25 at 601–02.  However, as the Plaintiff accurately points out, the ALJ decision offers no

26

27

28 [10] The Court need not decide whether the improvements the ALJ found are supported
   substantial evidence given the Court's ruling as stated herein.

citation or explanation as to how Plaintiff's daily activities contradict these opinions. (ECF 19 at 19.)  In this section of the decision the ALJ does not identify the daily activities he is relying on to undermine the two opinions, nor does he explain how Plaintiff's account of her daily activities undermine the opinions.  As stated in the improvement section above, his mere conclusion without explanation is not substantial evidence.

Again, looking elsewhere in the decision, in the portion of the decision addressing Plaintiff's allegations, the ALJ does list what he describes as Plaintiff's own admitted daily activities.  (AR 35.)  Specifically, he rejects her allegations of agoraphobia because she "goes out for coffee and runs errands with her friends, sings extensively and with great attention to vocal quality, takes her dog on walks, takes her dog to trainers, attends her son's school functions, and goes on trips with her fiancé." (*Id.*)  As to her allegations she has difficulty interacting with others, the ALJ again relies on interaction with her best friend and getting coffee with friends, interacting with others on the internet, and "interact[ing] with her mental health care providers." (*Id.*)  Her allegations regarding concentration are rejected because she reads, watches television, trains her support dog, attends her son's band activities, and interacts on a blog."  The ALJ's overall impression is that "[s]he is plainly able to participate in a wide range of self-selected activities that she wishes to do and enjoys doing." (*Id.*)

As in the improvements section above, the ALJ does not point to these same daily activities when concluding that Plaintiff's daily activities were not considered as part of Dr. Tilley and Addario's opinions.  Even assuming he meant these daily activities were meant to apply to his discrediting of the two doctors' opinions, the ALJ fails to explain why these activities undermine the doctors' opinions, and in what way.  As previously noted, the ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors,' are correct.*" Reddick,* 157 F.3d at 725.  The only analysis the ALJ did was to note that Dr. Tilley's and Dr. Addario's opinions did not consider Plaintiff's own admitted daily activities.  Admittedly, both opinions were

rendered before the Plaintiff testified about her daily activities. However, his one-line observation does not relieve him from his burden to set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Tomasetti*, 533 F.3d at 1041(citations omitted). The ALJ fails to provide this analysis to support his finding that Plaintiff's "admitted daily activities" contradict Dr. Tilley and Addario's' opinions. As such his reliance on this factor is not supported by substantial evidence.[11]

### 3. Harmless Error

The Court finds the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Tilley's and Dr. Addario's examining physician opinions. Additionally, the Court finds this error was not harmless. "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)) "[W]here the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Id.* Erring in rejecting two examining physician opinion is significant. If Dr. Tilley and Dr. Addario's opinions are reconsidered and given due consideration, Plaintiff's RFC may certainly change.

### B.   Failure to Properly Evaluate Plaintiff's Subjective Complaints[12]

#### 1.   Applicable Standard

The ALJ must engage "in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014

---

[11] Again, given this conclusion, the Court need not reach whether the ALJ's interpretation of her daily activities is supported by substantial evidence.

[12] Although the Court need not reach whether the ALJ additionally erred in rejecting Plaintiff's testimony regarding the severity of her symptoms, the Court has considered and addresses it as well.

(citing *Lingenfelter*, 504 F.3d at 1035-36). At the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations omitted).

If the claimant satisfies the first step and there is no determination of malingering by the ALJ, "the ALJ must provide 'specific, clear, and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler*, 775 F.3d at 1102 (quoting *Smolen*, 80 F.3d at 1281); *Garrison*, 759 F.3d at 1014-15; *Parra v. Astrue,* 481 F.3d 742, 755 (9th Cir.2007) (citations omitted). In weighing the credibility of a plaintiff's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Smolen*, 80 F.3d at 1284. The ALJ may consider the "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)

However, "the ALJ must identify the *specific testimony* that he discredited and explain the *evidence undermining*." *Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020) (emphasis added). The ALJ must "'*specifically* identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines this testimony." *Treichler*, 775 F.3d at 1102 (emphasis added); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."); *Vasquez v. Astrue,* 572 F.3d 586, 592 (9th Cir.2009) ("To support a lack of credibility finding, the ALJ [is] required to point to *specific facts* in the record.")(emphasis added) (internal quotation marks omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). If the ALJ's credibility finding is supported by substantial evidence in the record, we may

not engage in second-guessing.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan*, 169 F.3d at 600).

## 2. The ALJ's Findings

The ALJ's decision summarizes Plaintiff's testimony given at the hearing. (AR 21-22.)  He then found, "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 22.)  He then concludes "[t]he claimant's mental health treatment has been routine and conservative, and her progress notes generally show improvement in her symptoms with medication and therapy." (*Id.* at 23.)

The decision then summarizes Plaintiff's medical records chronologically. (*See* AR 23-34.)  He concludes "[o]verall, the objective medical evidence does not support the claimant's alleged near-total loss of functioning.  Although she has had extensive mental health treatment since her alleged onset date, her treatment has generally been routine and conservative." (AR 34.)  The decision states she "has received individual therapy and medication management, and a short course of intensive outpatient therapy in the summer of 2016.  Although she reported episodes of acute suicidal ideation, these were infrequent, and she never sought or received inpatient mental health treatment." (AR at 34.)

The ALJ then goes on to characterize her "symptoms of depression and anxiety [as] hav[ing] improved over time with adjustments to her medications, therapy, and utilization of coping skills, including her dog.  Although she still has ongoing symptoms of anxiety, depression, and agoraphobia, her mental status examinations have generally been unremarkable for any cognitive limitations," pointing to no suicidal ideation, no auditory or visual hallucinations, linear thought process, good insight and judgment, and intact

memory." (AR 34.)  The ALJ then summarizes portions of Dr. Greytak's observations and findings.  (AR at 34-35).

As quoted and summarized above, (*see* Section V.A.2.c)(3)(b)), the decision identifies activities Plaintiff has engaged in, including getting coffee with a friend, singing, walking her dog, attending her son's school functions, interacting with others online and her mental health care providers.  (AR 35.)  It also identifies reading, watching TV, and training her support dog with regard to concentration.  (*Id.*)  It sums up by asserting "[s]he is plainly able to participate in a wide range of self-selected activities that she wishes to do and enjoys doing."  (*Id.*)

Although the ALJ does not specifically state that these findings are meant to address Plaintiff's hearing testimony, the Court reasonably assumes that the ALJ is addressing her testimony.[13]

### 3.  Analysis

The first step is met because the ALJ found Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms.  (AR 22.)  As to the second step, because the ALJ did not find Plaintiff was malingering, the issue is whether the ALJ provided "specific, clear, and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms,[14] including identifying "the specific testimony" the ALJ found "not to be credible" and "explain[ing] what evidence undermine[d] this testimony."  *Lambert*, 980 F.3d at 1268; *Treichler*, 775 F.3d at 1102.

---

[13] The Court notes that other than the ALJ's extensive summaries, this is the only section that specifically addresses Plaintiff's allegations as being inconsistent with the objective medical evidence.

[14] As noted above, (*see* Section III) the ALJ found Plaintiff had the following severe impairments: anxiety disorder, mood disorder with depression, and migraines. (AR 16) The severity of the symptoms from these impairments is the focus of whether the ALJ properly discounted based on clear and convincing reasons.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### (a)     Routine and Conservative Treatment

The conservative nature of a plaintiff's treatment can provide a clear and convincing reason for rejecting a plaintiff's statements concerning the severity of impairments. *See Parra,* 481 F.3d at 751 ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). As noted above, the ALJ found that Plaintiff's treatment was routine and conservative because "[s]he has received individual therapy and medication management, and a short course of intensive outpatient therapy in the summer of 2016." (AR at 34)

The first problem with this finding is the ALJ's failure to identify what part of Plaintiff's testimony he finds inconsistent with conservative and routine treatment. *See Treichler*, 775 F.3d at 1103 (Decision must "identify what parts of the claimant's testimony were not credible and why"). Secondly, the decision does not explain why her having individual therapy and medication management, and a short course of intensive outpatient therapy in the summer of 2016 undermines her alleged symptoms associated with her impairments. Nor does the ALJ's decision explain why they constitute conservative treatment as opposed to non-conservative treatment.

Notwithstanding, his finding of conservative treatment is not supported by substantial evidence in the record. In addition to the variety of prescribed medications she was taking during the relevant period, (AR 23-33), she also attended intensive outpatient cognitive behavioral therapy for two months in 2016, (AR 31), and then, also in 2016 began receiving repetitive transcranial magnetic stimulation, at times daily (AR 32). The Court finds this is not a conservative course of treatment. *Drawn v. Berryhill*, 728 Fed. Appx. 637, 642 (9th Cir. 2018) (Finding ALJ's characterization of Plaintiff's treatment as "limited and conservative" was improper given that she was prescribed a number of psychiatric medications); *see, e.g., Torquato v. Berryhill*, Case No. 17-cv-2127-BAS-NLS, 2018 WL 3064568, at *6 (S.D. Cal. June 20, 2018); *Green v. Berryhill*, Case No.: 2:17-cv-01339-APG-NJK, 2018 WL 4291960, at *5 (D. Nev. Aug. 20, 2018)(collecting cases regarding psychiatric medications); *see also Mason v. Colvin*, No.

1:12-cv-00584 GSA, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (finding plaintiff's treatment not conservative because she took prescription antidepressants and other medications and received mental health treatment from a psychiatrist and social worker).

### (b)   Failure to Seek In-Patient Treatment for Episodes of Suicidal Ideation

The ALJ found that although Plaintiff reported episodes of acute suicidal ideation, these were infrequent, and she never sought or received inpatient mental health treatment. We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti,* 533 F.3d at 1039 (quoting *Smolen,* 80 F.3d at 1284); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).  Moreover, a claimant's failure to assert a good reason for not seeking treatment, "or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair,* 885 F.2d at 603.

Again, the decision does not identify the testimony the ALJ sought to discredit by his finding she never sought inpatient mental health treatment for her suicidal ideations. Nor does the decision indicate whether she was advised to seek such treatment but did not do so. *Cf Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012) *superseded by regulation on other grounds* ("Here, the record was filled with evidence that despite . . . repeated efforts to persuade [the plaintiff] to seek psychiatric treatment for her anxiety disorder, she failed to do so until after she applied for disability benefits.).  Additionally, the decision fails to explain why such a failure to seek inpatient treatment in her case undermines her testimony.  What the decision asks the reviewing Court to do is accept this single statement in a vacuum, without any context and explanation.

### (c)   Improvement

As previously stated, as to Plaintiff's improvements, the ALJ states "her progress notes from her therapists and psychiatrists have shown her symptoms of depression and

anxiety have improved over time with adjustments to her medications, therapy, and utilization of coping skills, including her dog."  (AR 34.)  "Although she still has ongoing symptoms of anxiety, depression, and agoraphobia, her mental status examinations have generally been unremarkable for any cognitive limitations.  They have generally shown her to have anxious mood and affect, but normal behavior, no suicidal ideation, no auditory or visual hallucinations, linear thought process, good insight and judgment, and intact memory."

(*Id.*)

First, the decision does not identify the specific testimony it seeks to undermine by this finding of her improving.  Although the ALJ summarizes her testimony, the decision does refer to the specific testimony this alleged symptom improvement discredits. "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints.").

Second, although the decision points to symptom improvement, that improvement would have to be supported by substantial evidence in the record.  But here, the ALJ just says "progress notes" without identifying which progress notes he is relying on.  In his decision he gives detailed summaries of her medical records, but seemingly expects the Court to sift through those to find the progress notes that support his conclusion. "[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible."  *See Lambert*, 980 F.3d at 1278 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)) (Explaining that a "detailed overview of . . . medical history" is insufficient) (emphasis in original).

The only example the ALJ provides to support his finding is a December 2015 consultation with Dr. Greytak. (*See* AR 34-35.)  Although this visit provides support for

his finding of improvement, the ALJ cannot selectively rely on entries of improvement while ignoring others that indicate the opposite. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (Finding substantial evidence was lacking when the ALJ "selectively relied on some entries" in medical records and "ignored the many others that indicated continued, severe impairment.").

Even when the Court goes searching through the decision and record for support, the ALJ's own summaries disclose numerous examples where Plaintiff is not improving. For example, the ALJ cites a November 2016 visit when she reported consistently meeting once a week with a friend and attending her son's band performance (presumably an improvement the ALJ relies on), but a month later (December 2016) she reported "continued panic attacks, 'maybe a little less,' but still of the same intensity" and a month after that at a January 2017 appointment with Dr. Tilley "she reported having suicidal ideation and a plan in December 2016 around her birthday." (AR 32.) Although this same visit summary notes overall objective improvement, it is "mixed with periodic bouts of *worsening* depression." (*Id.* (emphasis added).) The status of her symptoms is similarly mixed throughout 2017 when she has visits where she reports improvement from transcranial magnetic stimulation ("rTMS") recommended by Dr. Tilley (February/May/June), but she's also reporting having panic attacks while driving and that her improvement in agoraphobia was inconsistent (May 2017). (AR 33.) This is again followed by a July 2017 sudden and acute increase in suicidal ideation where she took preliminary steps to act. (*Id.*)

The ALJ's summary of Plaintiff's medical history does identify visits when Plaintiff's was better than at others, including the last summary in August 2017, but they are followed by worse symptoms and even the ALJ's final summary in August 2017 is mixed, indicating both that she reported taking her friend on errands once a week, but continued to complain of really struggling with agoraphobia. (AR 33.)

Apart from the ALJ's own summaries of the evidence, the Plaintiff accurately points out that Plaintiff's medical records also demonstrate her lack of improvements.

(ECF 19 at 20 21 (identifying July 2017 recommendation that Plaintiff escalate treatment to electroconvulsive therapy), ECF 21 at 6-7 (identifying May 2016 report that she was so severely depressed she was unable to leave the house, shower, or attend appointments, November 2016 visit where Dr. Tilley observed increased depressive symptoms, Plaintiff's reports of suicidal ideation in January 2017 and July 2017, and her August 2017 report of struggling so significantly with agoraphobia she questioned whether it was worth it to try and overcome it).

In summary fashion the decision recognizes there is inconsistency in her improvements. "Although she still has ongoing symptoms of anxiety, depression, and agoraphobia, her mental status examinations have generally been unremarkable for any cognitive limitations. They have generally shown her to have anxious mood and affect, but normal behavior, no suicidal ideation, no auditory or visual hallucinations, linear thought process, good insight and judgment, and intact memory." (AR 34.) However, in minimizing this lack of improvement in her symptoms, he ignores the record as a whole and fails to identify what mental status examinations he is referring to or how those establish she is really improving overall.

In sum, because the record as a whole indicates inconsistent improvements, and the ALJ does not provide specific facts in the record and his interpretation of them to explain why these inconsistencies do not affect his finding of improvements, the Court cannot find that the ALJ's finding of improvement is supported by substantial evidence. The decision simply gives lip service to the contradictory evidence. *See Holohan*, 246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); s*ee also Garrison*, 759 F.3d at 1017 ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of

improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working) (citations omitted).

In that the ALJ failed to specify what portion of her testimony he finds to be inconsistent, the decision also lacks any explanation as to why the objective evidence of improvements undermines her testimony.  And the Court cannot infer this link. *See Lambert*, 980 F.3d at 1278 (Rejecting a district court's attempt to "shore up the ALJ's decision" and explaining that "[a]lthough the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and we are constrained to review the reasons the ALJ asserts.")(citations omitted)

### (d)    Daily Activities

There are "two grounds for using daily activities" to reject a Plaintiff's testimony: (1) daily activities that contradict other testimony and (2) daily activities that involves skills that are transferrable to a work setting.  *Orn*, 495 F. 3d at 639 (citing *Fair*, 885 F.2d at 603) (Finding "[n]either of the two grounds for using daily activities to form the basis of an adverse credibility determination are present in [the plaintiff's] case" and finding his activities did not contradict other identified testimony and they were not transferrable work skills).

An ALJ may consider "whether claimant engages in daily activities inconsistent with alleged symptoms." *Lingenfelter*, 504 F.3d at 1040.  Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Valentine*, 574 F.3d at 693.  However, daily activities only have bearing on the credibility of testimony "if [a claimant's] level of activity [is] inconsistent with . . . claimed limitations." *Garrison*, 759 F.3d at 1016 (quoting *Reddick*, 157 F.3d at 722).  The Ninth Circuit has also "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722.

As to the second basis, "[i]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, *a specific finding as to this fact* may be sufficient to discredit a claimant's allegations." *Morgan*, 169 F.3d at 600 (citing *Fair,* 885 F.2d at 603) (emphasis added); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (2005) (stating that the ALJ may discredit claimant's testimony "upon making specific findings related to those activities" if the claimant engages in "numerous daily activities involving skills that could be transferred to the workplace.").

Here the ALJ found that Plaintiff's activities were inconsistent with her symptoms and limitations. (AR at 35).  First, he notes that she alleges agoraphobia but she "goes out for coffee and runs errands with her friends, sings extensively and with great attention to vocal quality, takes her dog on walks, takes her dog to trainers, attends her son's school functions, and goes on trips with her fiancé."  (*Id.*)  Second, he asserts that she alleges difficulty interacting with others, but again she is able interact with her best friend and getting coffee with friends, interacting with others on the internet, and "interact[ing] with her mental health care providers."  (*Id.*)  Her allegations regarding concentration are similarly minimized because she reads, watches television, trains her support dog, attends her son's band activities, and interacts on a blog."  He concludes that "[s]he is plainly able to participate in a wide range of self-selected activities that she wishes to do and enjoys doing."  (*Id.*)

Although the decision identifies her allegations in summary fashion, it does not "specifically identify the testimony" which details those allegations for which he finds not to be consistent with her daily activities.  *Tretcher*, 775 F. 3d at 1102.  As regards her agoraphobia, he states that Plaintiff alleges agoraphobia, but he does not cite to her testimony as to what exactly she is alleging.  Without such identification, the reviewing court is left with the option of combing through her testimony to sort out those parts of her testimony in which she alleges agoraphobia.  Such is not the function of this Court.  Further, listing activities she can do, as the ALJ did, leaves unanswered the question as to

how these activities undermine her testimony about her agoraphobia.  He never ties the activities to her testimony primarily because he fails to identify what testimony he seeks to discredit.  The decision also does not explain how these activities could be transferred to the workplace as regards his finding she can perform light work.

The same problem exists as to his assertion that Plaintiff alleges difficulty interacting with others and difficulty concentrating.  He fails to cite to the specific testimony that concern these topics.  As a result, there is no analysis as to how her daily activities are inconsistent with her testimony.  Nor does the decision explain how these daily activities transfer to the workplace given her impairments.

A further issue presents as to whether the record reasonably supports his findings as to the daily activities she can do.  The Plaintiff contends that the ALJ takes these activities out of context.  The ALJ's summaries reflect Plaintiff is *not* engaging in these activities as frequently as he seems to conclude with his sweeping finding.  For example, (AR 25 (difficultly leaving the house but was attending pain management classes twice a week and avoiding going out of the house except for service dog training), 26 (going out once a week with an adult "babysitter"), 27 (attending son's band related activities, but not happy to be out more), 28 (forcing herself to take her support dog to different parks and successfully leaving the house by "focusing on her goal to rely on her dog in a multitude of situations"), 29 (attending her son's drumline competitions two Saturdays in a row and not able to go out alone), 30 (left her house only to go to the pet store and train her dog), 32 (consistently meeting her friend on Tuesday to drive her around), 33 (only seeing her friend every other week to drive her around for errands "but was able to sit with her in Starbucks" and a month later "felt more comfortable being in Starbucks" and back to being able to take her friends on errand once a week")).  These examples suggest that her activities outside her home are enough of an ordeal that they are noted as significant success in her medical records.  Additionally, as Plaintiff notes, although Plaintiff could occasionally engage in these activities with support from her spouse, she

1   was mostly housebound, and leaving home was both "homework" assigned by her

2   therapist and considered a notable victory. (ECF 19 at 19 (citing AR 1960, 1966).)

3   "When evidence reasonably supports either confirming or reversing the ALJ's

4   decision, we may not substitute our judgment for that of the ALJ." *Batson*, 359 F.3d at

5   1196.  Applied to the present case, the Court cannot decide if the evidence reasonably

6   supports the ALJ's finding that her daily activities are inconsistent with her testimony

7   primarily because the ALJ has not identified the testimony subject to this inquiry.

8   Further, the decision does not address the extent to which the Plaintiff can perform these

9   activities given the record as a whole indicates limited frequency.

10  **VI.   CONCLUSION**

11  Based on the above reasoning, Plaintiff's motion for summary judgment (ECF No.

12  19) is **GRANTED**, the Commissioner's cross-motion for summary judgment (ECF No.

13  20) is **DENIED**, and the case be **REMANDED** to the agency for further proceedings.

14  **IT IS SO ORDERED.**

15  Dated:  December 23, 2020

16

17  Hon. Bernard G. Skomal
    United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28